579 So.2d 245 (1991)
W.J. FRANKLIN, Appellant,
v.
Herbert STETTIN, Stanley Jay Bartel and Joseph W. Gibson, Appellees.
No. 90-706.
District Court of Appeal of Florida, Third District.
April 30, 1991.
Linda Kelly Kearson, for appellant.
Herbert Stettin and Pamela K. Stettin, for Stettin.
*246 Bartel and Gibson, in pro. per.
Before FERGUSON, COPE and LEVY, JJ.

ON MOTION FOR REHEARING
PER CURIAM.
Appellant, the son of Anderson Johnson who died intestate, appeals an order awarding attorney fees to Herbert Stettin, the court-appointed curator, and to Stanley Bartel and Joseph Gibson, as counsel for a daughter of the deceased. Franklin also challenges an award of fees to an accounting firm that was hired by the curator.
The main contention is that the small estate has been plundered in order to pay unnecessary fees. We affirm the award of fees to the curator and the accounting firm as reasonable and necessary, and reverse in part the award of fees to the attorneys for the daughter-beneficiary.
During the course of three hearings on the motions for fees and costs, the daughter's attorneys, Bartel and Gibson, testified on their own behalf and as expert witnesses for each other. As indicated by the following excerpts of testimony from these hearings, it is apparent that certain services rendered by Bartel and Gibson were not authorized, were not beneficial to the estate, or were duplicative of services performed on behalf of the estate by the curator.
Ms. Kearson [for appellant]: What did you discuss with Maude Johnson?
Mr. Gibson: That is privileged if you don't have a basis.
Ms. Kearson: You have three conversations [listed on your time records] here with Maude Johnson ... what benefit did your conversation with Maude Johnson have to this Estate?
Mr. Gibson: It assisted in the formation of the fund with which your client should be paid, Ms. Kearson.
Ms. Kearson: Did you also know that Maude Johnson has been dead for ten years... . How can you call up Maude Johnson? She has been dead for ten years.
Mr. Gibson: I can't respond to that.
* * * * * *
Ms. Kearson: Mr. Stettin, I would like for you to specify the value of Mr. Gibson's services to the discharge of your duties. How did he help you?
Mr. Stettin [curator]: I think I said that he was useful in assisting me in my services as curator and the ways he did was to make his investigators' material available to me.
* * * * * *
Ms. Kearson: Did you or [your associate] have to admonish Mr. Gibson during the course of depositions?
Mr. Stettin: I don't know if admonish is the right word. All I know is I thought that they dragged on interminably because of the friction that existed between Mr. Smith [attorney for another beneficiary] and Mr. Gibson.
* * * * * *
Mr. Gibson: I performed services in this Estate. Mr. Bartel and myself drafted the petition for administration, petition of appointment of a curator, met with the curator at his appointment, had tens and tens of telephone conferences with the curator and the curator's associate. I attended depositions at their behest. Many of the documents that were provided to [the curator's account], my office provided to the curator, investigation reports, meetings at the airport between [the curator's associate], myself, other persons, numerous leads rundown, some of them fruitful, some of them not, Your Honor.
Mr. Goodman [attorney for another beneficiary]: Mr. Gibson, under what authority did you do all of this work for the Estate?
Mr. Gibson: It was the right thing to do, Mr. Goodman.
Mr. Goodman: The court then appointed a curator. Is that also correct?
Mr. Gibson: I believe so, sir. I believe you are correct.
* * * * * *

*247 Mr. Goodman: ... Did [the judge] give you a specific court order to authorize you to continue investigation into ... this Estate and/or its assets?
Mr. Bartel: Can we concede that the court's records speak for itself? There is no specific court ruling giving Mr. Gibson or myself specific authority to investigate.
* * * * * *
Mr. Goodman: ... On your computer printout on page sixteen, you have some billings there, 7/30/88 court appearance, Joseph W. Gibson, Esq., arraignment... [w]hat arraignment is there? Isn't arraignment a criminal term?
Mr. Gibson: It is, yes.
Mr. Goodman: Is there any sort of criminal proceeding in this matter?
Mr. Gibson: No, sir.
Mr. Goodman: Can you tell this court what arraignment you attended?
Mr. Gibson: ... Maybe it is just a typo.
* * * * * *
Mr. Bartel [as Mr. Gibson's expert witness]: ... Mr. Gibson and I, without duplicating time in my judgment, made a concerted effort to assist the curator and turn over information to him. We had information from the family that he did not have access to.
* * * * * *
Ms. Kearson: ... So you prepared the documents?
Mr. Bartel: Yes, ma'am.
Ms. Kearson: Did Mr. Gibson assist you in that preparation?
Mr. Bartel: He looked them over.
Ms. Kearson: So then it is your time that should be accounted for, not Mr. Gibson's?
Mr. Bartel: Well, that is for the judge to decide, but my time was the primary time spent in drafting the papers that we are talking about.
* * * * * *
Ms. Kearson: Did the curator agree with [your putting pressure of contempt on witnesses]?
Mr. Bartel: At this point, we were attempting to achieve the same result, which was to recover the assets belonging to the Estate. He was doing it as part of his duties. We were doing it basically in order to make sure that nothing was overlooked factually or procedurally that might help to get it done as expeditiously and inexpensively as possible. (Emphasis added).
* * * * * *
Ms. Kearson: Did the curator ask you to attend all the depositions?
Mr. Gibson: I can't say he asked me to attend all of them, no.
At the conclusion of the hearings, Bartel and Gibson moved for, and were granted, expert witness fees.
Although fees may be awarded to an attorney who initially represents a beneficiary pursuant to section 733.106(3), Florida Statutes (1989), a fee award will not be assessed against the estate unless the attorney's services are also beneficial to the estate. In re Farris' Estate, 113 So.2d 721 (Fla. 3d DCA), cert. denied, 116 So.2d 775 (Fla. 1959). There is also a requirement, in such instances, that the attorney act in good faith. In re Graham's Estate, 156 Fla. 421, 23 So.2d 485 (1945). In this case a question of fact exists regarding the extent to which the services of Bartel and Gibson, rendered before a curator was appointed, benefitted the estate.
In deciding upon amounts to be awarded as attorney's fees, a trial court must consider the nature of the services rendered and the necessity for their performance, along with the reasonableness of the charges. Mercy Hosp., Inc. v. Johnson, 431 So.2d 687 (Fla. 3d DCA), rev. denied, 441 So.2d 632 (Fla. 1983). It is clear from the record testimony, and we so hold, that any services rendered by attorneys Bartel and Gibson after the court appointed the curator were duplicative of his efforts and therefore not beneficial to the estate.
The award of fees and costs to the curator and the accountant is affirmed; the award of fees and costs to the attorneys *248 for the daughter-beneficiary rendered after the curator was appointed is reversed; the award of fees to the daughter-beneficiary's counsel for services which predate the curator's appointment is vacated and the cause is remanded for reconsideration of that award in light of this opinion.